Good morning, your honors. My name is Michael Reeves and I represent Jesus Medina-Nevarez. And in this particular case, I imagine that the questions that the court has are two-fold. Number one, was there any prejudice to the defendant and or was this harmless error? And second, were the claims preserved? I'd imagine those the two most outstanding questions of this court's mind. And my position on that would be, your honors, that prejudice in this particular case was so overwhelming that the court needs to take an overall look at this particular case. In this case, the court ordered right before we started trial that no evidence of a rape would be raised. We walked out into trial and the first witness got up and spoke of a rape. Now, the words weren't rape. The words were, a man came out with his pants unzipped. He was near a bathroom where a woman exited crying hysterically. Those are indicia of rape. Whether or not the government uses the word rape, whether or not the witness uses the word rape, those are indicia of rape. Now, the other items that the court had talked about that shouldn't be spoken of were other crimes committed of the defendant. And my client, without having testified, had information presented to the court or presented to the jury that he had committed other crimes. The witness testified that for an hour he was interrogated regarding other matters. The government tries to pass this off as though those other matters were simply, where did you come from? Why are you here? What are you doing here? That doesn't take an hour. That left a clear impression with the jury that my client had been accused of other crimes. Was your client in the country lawfully? No, Your Honor. Couldn't he have been examined about how he got into the country? He could have. That would have taken three minutes. My client had... Answered the question directly, perhaps, but I'm not sure. It's really so suspicious that somebody who's not in the country lawfully might be examined about that separate from what he's charged with here. Well, but he wasn't accused of that in this particular case. That's my point. He could have been questioned about that without having been accused of that. Is it so remarkable that he was questioned about something else? You're saying there's such an inference by having this extra hour that the jury must have thought this guy was involved in all sorts of other bad things. I'm just not so sure that's automatic, given that his own status was unlawful, that the jury would have known that. They could have inferred that's what they were talking to him about. Well, but that is another crime. That is evidence of another crime. I'm sorry for me to see how that's been a prejudice to lead to this conviction. Well, in this state, in this particular time, this is one of the issues that's forefront, not only just in the state, but in the national elections. People are very concerned about that. They are also concerned about these allegations. When you combine what other crime were you involved with, with evidence of a situation where the jury's looking at my defendant, looking at my client, as though he is this mean, horrible monster, the government wants the jury to believe that he is. Was there any suggestion or was there any discussion of your defendant in proximity to the testimony about the individual with the zipper down? Is there any suggestion that that was your client? No, there's not any suggestion that that was my client. And that's why it was so prejudicial. If you bring up the fact that there's a rape occurring at this residence, it doesn't really matter to the jury what else is going on. The jury now has the focus in its mind that it's dealing with somebody that it cannot take the chance of letting go. And that's very similar to both the Bland case that I cited in my brief and the Frederick case. And particularly in the Frederick case, that's a case that is almost on point to this case in that there was allegations of a rape that were not subject to the case, and there were allegations of other crimes. And that is almost exactly the same facts that we have in this particular case, an allegation of separate crimes and of a rape, which leaves the jury thinking that they cannot possibly let this man out under any circumstances. I don't know if I opened it up to any other questions that the court might have. On that subject, in your brief, you asserted the government's case was clearly weak. Do you really think it was all that weak? Well, it's... I mean, there are a lot of witnesses and a lot of confessions. There were witnesses and there were confessions. There were confessions that shouldn't have been brought out. That's why the case should have been severed. My client did not have the opportunity to confront those confessions that came out. There was an extensive discussion about that matter pre-trial. The witnesses that were examined were shown to have lots of defects in their testimony. But beyond that, it's impossible to say that the jury wasn't prejudiced by this case, but prejudiced by these allegations of rape and other cases that you have. And so, I think it's important to think about what the jury used from what the jury didn't use when you have such particularly horrendous allegations. I don't see any other questions. You have a few moments for review. I would reserve that time. You can hear from the government. Thank you. And you can respond if you wish. Ms. Settle? Good morning. Good morning. My name is Lisa Settle and I represent the United States. The defendant has taken out of context Officer Dugan's testimony and he complains of this perceived prejudice of an indirect inference of possible conduct by another individual. Such testimony on the first day of a six-day trial tells in comparison to what the defendant directly did. His culpability was overwhelming and egregious. Two of the victims who identified in the trial, Jorge Contreras Nicanor and Abraham Farfan Perez, said the following. And this is for Jorge Contreras, S.E.R. 35-44. The defendant beat him. The defendant burned him with a cigarette on his face. He kicked him. He pistol whipped him. He locked him in the closet. He describes his injuries to the jury from photographs taken from the day he was rescued. He showed the jury the scars on his face that he still had from that day. And he also testified the defendant pointed a gun directly at his head. Abraham Farfan said he saw an alien get hit on his head and kicked so badly, the alien laid there while the other smugglers watched. He himself was hit on the forehead and was all bloody and showed the pictures and described his injuries to the jury. He also described being strip searched. And when money was found on another alien, the smugglers placed a plastic bag over that alien's head, kicked him and beat him until he fell to the ground. And Abraham testified the defendant was always there watching. And that they were threatened, all the aliens in the house were threatened with death. When Abraham had the opportunity, he thought he would die in the house. Instead of being killed, he said he tried to escape. And when he escaped, he got help. And he brought him back to see the other people being held hostage at that time. You were the trial attorney in this case. Yes, I was. So everyone knows that the rape is not supposed to be mentioned and then the first witness gets up there and did the witness just blurt it out? There was a van running, exiting a bathroom, the zipper down and a woman crying? Well, again, it's taken out of the scene. And what he remembered was that the aliens in the house, after the police officer had knocked on the door, were pushing four people out of this house. And one of the men they were pushing was nonchalant and had his zipper undone. Why was that relevant? It was unresponsive to what was asked. But that's just how he remembered the person being pushed out. The question that preceded that answer was, what did you do after these people were taken, these four people were detained? Do I have that right? On page 26 of the S.A.R. and 141 of the reporter's transcript. Was that the question that brought forward the answer that described the man with his pants unzipped? They were in direct and once in cross-examination, which is page 161 of the reporter's transcript. He was asked to describe the people that were being pushed out and that he detained. And that's when he first talked about, he said he noticed the zipper was undone. But on the second time, the second time that he mentioned that, that was when he was just talking about going into the house after the people were detained. You couldn't move to strike the answer as nonresponsive, could you? Yes, I could have, Your Honor. But he just kind of stuck it in there, what he was describing, because at this point, the people were already detained. And it's not like they occur at the same time. What he's describing is that the people were being pushed out. The four smugglers were detained. He actually goes into it, says that they were detained. He put another officer with them, made sure that they weren't talking. And after that, they went into the house. And then he found a woman crying into the bathroom. So there's a time period between these two things. It's not like the woman was running out of the bathroom, as defense counsel said. It was, there was a time period. They were detained outside the house. Then they went inside the house. And that's when Officer Dugan described finding the woman crying in the bathroom, finding aliens in every room in the house, in the hallway, in every room, and in the living room. And that's when he found the weapons. The aliens actually helped him find the weapons. And then the third time it was mentioned, that was on cross-examination. But defense counsel never gave a chance to correct it. He waited until after that testimony of that witness was in. And so even if it was a poor choice of words, it was harmless, considering the overwhelming evidence presented at trial. Now, there were, that woman crying, there were an infinite number of reasons to be upset if you were a hostage held in this house. There were burnings, beatings, the firearms, extortion, the death threats, the strict search. Everybody was terrified. And so... It's going out of its way to describe her level of response, how distraught she was, and how it was different from other people in the house, right? I'd nod to that. I think it was a poor description of the smuggler. But there was no intention to infer sexual misconduct. In fact, any... Why do you say that? Because, I mean, you look at the record here. I mean, you could have had a lot of other people crying for all the reasons you just described. But you have the woman in the bathroom, the guy who was out in the street, and all this stuff, and you're trying to get everybody upset with this zipper down. I mean, it's not relevant to anything else except to insinuate that there's a rape that's occurred, isn't it? Isn't that the logical deduction that any woodwind makes sitting on the jury or here? I don't believe so because, first, there is no ever, there's never another reference to the zipper, during the rest of the trial, or the argument. Also, Your Honor, he was just describing the man as nonchalant. He puts them both together, why he thought these people were smugglers. And, again, there's this time period. I mean, there actually wasn't any misconduct that occurred in that bathroom. That's one thing. And there's a long time period between the actual observation of this person outside the residence and locating a female crying inside. There's a time period. People were everywhere in the hallway. She could have run into the bathroom. I mean, I don't think that there is an inference of sexual misconduct. Also, the defendant was not present. But you could have followed up with a question to clear that up right then and so that the inference wouldn't have been left. You know, given the court's instruction that this rape not be, that rape not be brought in. Well, with no motion filed, Your Honor, there was no opportunity to clear up that. And there was nothing, there was no objection, there was no motion for mistrial filed until after his testimony was complete. Therefore... Well, isn't that the normal way to proceed? You don't want to, if the motion is going to be denied, you don't want to inflame the jury more. He could have objected prior to cross-examination, as he did with Agent Leoborion's testimony, which was his other motion for mistrial. And if Your Honor would like, I'd move on to that, that Agent Leoborion's testimony was necessary. He did speak Spanish. He read the defendant Medina, his Miranda rights. He was describing... Which officer are you talking about now? This is Agent Leoborion. And that was the other motion for mistrial. He was the one who interviewed the defendant for an hour. And he stated, he asked questions regarding the defendant's background and alienation. He described how he was, how he gave the defendant his Miranda rights, and that those rights and the waiver of those rights was voluntary. This case is not like the Federer case. The Federer case was different. In that case, the defendant was charged with sexual misconduct and two officers testified as to additional sexual misconduct with other minors. And that case was not reversed based on just that testimony. It was a cumulative effect of other things that resulted in a reverse. So I think it's a very different case. And in this case, I did notice there was no, it's not the 18th, 2006, page 30 to 31. After he moves from mistrial, the defense counsel proceeds to emphasize the time period of the interview on cross examination. He asked Agent Leoborion to repeat how long he interviewed the defendant and how long the defendant is interviewed by others, thus inviting error. Would the court like to be heard on severance or the other issues? That, I know, wasn't mentioned. But as to severance, the court did not abuse its motion, its discretion in denying the motion to sever. In no time was this motion renewed, not during trial. He only commented on it before a jury was selected, thus depriving the district court any chance to determine whether, after the evidence was presented, whether there was any prejudice by admitting, by not severing the trial. Thank you very much. Thank you. Provost? Mr. Reeves? Just briefly, Your Honor. This case is more egregious than the Frederick case. Frederick, he was accused of rape. Rape was already on the table. It was already something that was in front of the jury. In this case, rape was not in front of the jury. The rape was not supposed to be in front of the jury. And yet, the first words out of the first witness' mouth is that a man comes out of the house with his zipper down. And they emphasize he's followed right by a woman found in a bathroom who was crying hysterically, more hysterically than any of the other witnesses. There was no need to bring that up to this particular jury and to taint that jury right from the very get-go. And there was nothing I could do at that point to unring that bell. I couldn't get up and say, objection, Your Honor. We already had that matter precluded. Because the jury's going to go, well, what matter? Then they're going to have a question of what, why is this rape precluded? We opened a door that we could never have closed. This is worse than the Frederick case because my client was not accused of rape. Rape was not supposed to be part of this trial. And yet, it's the first word out of the witness' mouth. Thank you. Thank you. Thank both sides of the argument. The case just argued will be submitted for decision. And we'll proceed with the last case on this morning's calendar, which is the United States v. Plaza, you say it then?
judges: Hawkins, Thomas, Clifton